FILED by LBG D.C.

ELECTRONIC

**Sept. 23, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## WEST PALM BEACH DIVISION

Case No._____

ESSEX INSURANCE COMPANY,           **09-81430-Civ-DIMITROULEAS/SNOW**

     Plaintiff,

v.

KEHRER CONSTRUCTION, INC., a dissolved
Florida corporation; SHARON OCHS, individually,
and as mother and natural guardian of NICHOLE OCHS,
a minor; JOYCE PESSEL-YASKOKI, and her
husband PETER YASKOKI; IAN YASKOKI;
MARTHA CALCANES, and
STEPHEN CALCANES, her husband, individually,
and as parents and natural guardians of
NICOLE CALCANES, a minor,

     Defendants.

_____/

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Plaintiff, ESSEX INSURANCE COMPANY ("ESSEX"), and hereby files this Complaint for Declaratory Judgment and alleges as follows:

### Parties, Jurisdiction, Applicable Law and Venue

1.    This is an action for declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and Chapter 86 of the Florida Statutes, to declare the rights surrounding questions of actual controversy that presently exist between Plaintiff and Defendants.

2.     Venue is proper in the West Palm Beach Division of the Southern District of Florida pursuant to 28 U.S.C. § 1391 because the events and transactions giving rise to this action occurred in this district and because Defendants are subject to personal jurisdiction within the district.

3.     ESSEX is a foreign corporation organized and existing under the laws of Delaware with its principal place of business in Virginia, making ESSEX a citizen of the states of Delaware and Virginia for purposes of diversity jurisdiction.

4.     At all times material to this action, ESSEX was authorized to transact business in the state of Florida and submits itself to the jurisdiction and venue of this Court.

5.     Defendant Kehrer Construction, Inc. ("KEHRER CONSTRUCTION") was a Florida corporation at all times material to this litigation; however, KEHRER CONSTRUCTION administratively dissolved in 2007.

6.     Defendant SHARON OCHS is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

7.     Defendant SHARON OCHS is the mother and natural guardian of NICOLE OCHS, a minor domiciled in Palm Beach County, Florida and a citizen of Florida.

8.     Defendant JOYCE PESSEL-YASKOKI is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

2

9.    Defendant PETER YASKOKI is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

10.    Defendant IAN YASKOKI is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

11.    Defendant MARTHA CALCANES is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

12.    Defendant STEPHEN CALCANES is an individual domiciled in Palm Beach County, Florida, and a citizen of Florida.  Defendant is subject to the jurisdiction and venue of this Court.

13.    Defendants MARTHA CALCANES and STEPHEN CALCANES are the parents and natural guardians of NICOLE CALCANES, a minor domiciled in Palm Beach County, Florida and a citizen of Florida.

14.    The Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332(a) because it is a civil action in which the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3

15.    The issues in controversy in this action should be determined under the laws of Illinois because the parties to the subject insurance policy entered into the policy in Illinois.

### Dispute at issue

16.    Defendants OCHS, YASKOSKIS and CALCANES filed a lawsuit in the circuit court of the Fifteenth Judicial Circuit in and for Palm Beach, County, Florida, case number 50 2009 CA 014189.    The Underlying Complaint is attached as EXHIBIT A.

17.    Defendants allege that they all reside in Boca Raton, Florida. *See* EXHIBIT A at ¶ 12.

18.    Following Hurricane Wilma, Defendants sustained damages to their roofs. *See* EXHIBIT A at ¶ 14.

19.    Defendant KEHRER CONSTRUCTION was the general contractor and entered into contracts with Defendants to replace their roofs. *See* EXHIBIT A at ¶ 15.

20.    Defendant KEHRER CONSTRUCTION subsequently replaced the roofs in early 2006. *See* EXHIBIT A at ¶ 16.

21.    Defendants allege that following the first rainy weather, Plaintiffs "had water leaking into their homes from various locations on their roofs." *See* EXHIBIT A at ¶ 17.

22.    Initially representatives of KEHRER CONSTRUCTION attempted to repair the problems, but Defendants' roofs continued to leak and KEHRER

4

CONSTRUCTION never completed the repair to the roofs.  See EXHIBIT A at ¶ 18.

23.    Defendants allege that KEHRER CONSTRUCTION failed to use flashing, which is used to seal and protect the joints on the roof from water penetration.  See EXHIBIT A at ¶ 19.

24.    Defendants further allege that "[w]henever it rained, the roofs leaked resulting in both severe water and structural damage to the homes' interiors, and causing various health problems to the Plaintiffs."  See EXHIBIT A at ¶ 19.

25.    The following counts are in Defendants' lawsuit:

- Count I – Breach of Contract for the Calcanes
- Count II – Breach of Contract for the Yaskoskis
- Count III – Breach of Contract for Sharon Ochs
- Count IV – Violation of Florida Building Code—Common to All Plaintiffs
- Count V – Negligence – Nicole Ochs
- Count VI – Negligence -- Calcanes
- Count VII – Negligence – Ian Yaskoski
- Count VIII – Negligence –Joyce and Peter Yaskoski

See EXHIBIT A.

### The Policy

26.    Plaintiff ESSEX issued to Gire Construction, Inc. a commercial general liability policy, policy number 3CS5114, with effective dates of coverage from September 3, 2005 to September 3, 2006 (the "Policy").  A copy of the Policy is attached as EXHIBIT B.

27.     By endorsement dated January 20, 2006, Defendant KEHRER CONSTRUCTION was added as a named insured to the Policy.   See EXHIBIT B.

28.     The Policy provides coverage under Section I - COVERAGES, COVERAGE A   BODILY INJURY AND PROPERTY DAMAGE LIABILITY, as follows:

### SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

    a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any "claim" or suit that may result. But:

        (1)     The amount we will pay for damages is limited as described in Section III—Limits of Insurance; and

        (2)     Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A. or B., or medical expenses under Coverage C.

\*\*\*

    c.     "Bodily injury" or "property damage" which occurs during the policy period, and was not, prior to the policy period, known to have occurred by any insured under Paragraph I. of Section II.—Who is an Insured

6

or any employee authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured under Paragraph I. of Section II.—Who is an Insured or any employee authorized by you to give or receive notice of an "occurrence" or claim:

1)  Reports all, or any part of, the "bodily injury" or "property damage" to us or any other insurer;

2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

3)  Becomes aware of any other means that "bodily injury" or "property damage" has occurred or begun to occur.

e.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

\* \* \*

29.  The Policy contains the following relevant exclusions:

**2.  Exclusions**

This insurance does not apply to:

\* \* \*

**a.  Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

\*\*\*

7

**j.    Damage To Property**

"Property damage" to:

\*\*\*

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

\*\*\*

Paragraph (6) of thie exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\*\*\*

**l.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

\*\*\*

**COMBINATION GENERAL ENDORSEMENT ME-001 (01/05)**
THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

\*\*\*

5.    This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied-in fact contract.

\*\*\*

7.    Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses nor any

8

obligation to share such damages or repay another. However, this does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.

8.   Professional Liability, Errors, Omissions, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type of professional service is not coverage under this policy, unless such coverage is specifically endorsed onto the policy.

10.  This insurance does not apply to "bodily injury", "property damage", "personal injury", advertising injury" or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:

***

k.   resulting from water or moisture, and/or due to discharge, leakage, seepage, backup or overflow from sewers, mains, drains, pipes, plumbing, heating, refrigeration, air conditioning, standpipes, appliances, sprinkler systems, or ditches, streams, levees, or rain or snow admitted to the building interior; or

***

12.  Where there is no coverage under this policy, there is no duty to defend.

***

## COMBINATION CONTRACTORS ENDORSEMENT M/E-043 (01/05)

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions; However, the following is not an "occurrence" under this policy:
     a.   Actual and/or alleged defective work; and/or
     b.   Actual and/or alleged defective workmanship; and/or
     c.   Actual and/or alleged defective construction; and/or
     d.   Actual and/or alleged negligent construction.

9

2.    Under Coverage Form Section I – Coverages, 2. Exclusions, the last paragraph of Exclusions J. Damage to Property, and I. Damage to Your Work, are deleted in their entirety.

3.    This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury', or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from

***

c.    any invasion or existence of water or moisture, including but not limited to accidental discharge and/or leaks, and/or mold, mildew, bio-organic growth, microorganisms, biological organisms, biaerosol, organic contaminants, and/or including but not limited to rot and deterioration of property; and/or

***

e.    run off, diversion and/or ponding of water, inadequate drainage, backup and/or overflow, including but not limited to, water, sewer, drains, ditches, pipes, site preparation; and/or

***

30.    The Policy has the following relevant conditions:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

***

2.    Duties In The Event of Occurrence, Offense, Claim or Suit

a.    You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)    How, when and where the "occurrence" or offense took place;

10

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.   If a claim is made or "suit" is brought against any insured, you must:

(1)   Immediately record the specifics of the claim or "suit" and the date received; and

(2)   Notify use as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.   You and any other involved insured must:

(1)   Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2)   Authorize us to obtain records and other information;

(3)   Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4)   Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d.   No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

\*\*\*

11

**ADDITIONAL CONDITIONS ENDORSEMENT ME-002 (1/05)**

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

This insurance does not apply to "bodily injury", "property damage", "personal injury", advertising injury" or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:

1.

\*\*\*

(D)     If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy, and carry workers compensation insurance, and you require and secure certificates of insurance conforming same.  Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense.  If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

\*\*\*

31.    The Policy has the following relevant definitions:

**SECTION V - DEFINITIONS**

\*\*\*

12

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\*\*\*

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

16.   "Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\*\*\*

17.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a.    An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\*\*\*

22.   "Your work":

a.    Means:
      (1)   Work or operations performed by you or on your behalf; and
      (2)   Materials, parts or equipment furnished in connection with such work or operations.

      b.    Includes

          (1)    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

          (2)    The providing of or failure to provide warnings or instructions.

***

32.    Defendant KEHRER CONSTRUCTION did not report any "occurrence" or claim which may result in a claim "as soon as practicable" after the roofs allegedly began leaking sometime in 2006.

33.    ESSEX did not learn of this "occurrence" or claim until sometime in June 2009 when Defendant KEHRER CONSTRUCTION forwarded the Underlying Complaint to it.

34.    Because of Defendant KEHRER CONSTRUCTION'S late notice, ESSEX is entitled to disclaim coverage.

35.    Even without regard to the effect of Defendant KEHRER CONSTRUCTION'S failure to provide ESSEX with timely notice of this loss, the Policy does not cover this loss.

36.    The allegations of the Underlying Complaint determine ESSEX'S duty to defend.

37.    The named insured under the Policy is "Kehrer Construction, Inc.," not "Ed Gire d/b/a Kehrer Construction & Roofing, Inc." as alleged in the Underlying Complaint. *See* EXHIBITS A & B.

38.    To the extent that Ed Gire d/b/a Kehrer Construction & Roofing, Inc. is a separate entity from Kehrer Construction, Inc. and performed work that is

14

subject to the Underlying Complaint, the Policy provides no coverage for Ed Gire d/b/a Kehrer Construction & Roofing, Inc.

39.    The Policy and applicable law do not require the Policy to cover damages arising out of breach of contract.

40.    The Policy and applicable law do not require the Policy to cover "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

41.    The Policy and applicable law do not regard defective work, defective workmanship, defective construction, or negligent construction as an "occurrence."

42.    The Policy and applicable law do not require the Policy to cover the costs of repair and/or replacement of the allegedly defective roofs.

43.    The Policy and applicable law do not require the Policy to cover damages arising out of the insured's professional liability or negligence.

44.    The Policy precludes coverage for "property damage" and "bodily injury" that result from water or moisture.

45.    According to the Policy and applicable law, where there is no coverage, there is no duty to defend.

46.    However, if there is coverage under the Policy for any claims, the Policy's limits are limited to $50,000 per occurrence and in the aggregate if KEHRER CONSTRUCTION used a subcontractor to perform the work on its behalf who did not carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name KEHRER

CONSTRUCTION as an additional insured on the subcontractor's policy, and carry workers' compensation insurance.

## DECLARATORY JUDGMENT

47.    Plaintiff ESSEX re-alleges paragraphs 1 through 46 above as if fully set forth herein.

48.    There exists a bona fide, actual, present and practical need for a legal  determination by this Court of the duties, rights and obligations, if any, of ESSEX with regard to injuries and damages arising out of the defective roofs.

49.    Plaintiff and Defendants have an actual, present, adverse and antagonistic interest in the subject matter described herein.

50.    The rights and obligations of ESSEX under the insurance contract are dependent upon the facts referenced herein and the law applicable to such facts.

51.    All conditions precedent to the maintenance of this action have been complied with, have occurred, or otherwise have been waived.

52.    All parties who do or may claim an interest in the subject matter hereof have been joined herein as parties.

53.    The insurance policy does not provide coverage for any "property damage," "bodily injury," or other damages arising out of the alleged water leaks from the defective roofs.

54.    Pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and Chapter 86 of the Florida Statutes, ESSEX is entitled to a

declaration that the Policy provides no coverage for any claims with respect to or arising out of the allegedly defective roofs.

WHEREFORE, ESSEX requests entry of final judgment in its favor against Defendants, declaring that the Policy provides no coverage for "bodily injury," "property damage," or other damages with respect to or arising out of the allegedly defective roofs so that ESSEX has no duty to defend or indemnify for the losses complained.

Dated: September 16, 2009
       Tampa, Florida


Respectfully submitted,


RYAN K. HILTON
Florida Bar No.: 304610
rhilton@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
777 S. Harbour Island Blvd., Suite 500
Tampa, FL 33602
Tel. (813) 281-1900
Fax. (813) 281-0900
Attorneys for Plaintiff, Essex Insurance Company

IN THE CIRCUIT COURT OF THE 15TH JUDICIAL CIRCUIT IN AND FOR
PALM BEACH COUNTY, FLORIDA

SHARON OCHS, individually, and as
Mother and natural guardian of NICHOLE OCHS,
A minor, JOYCE PESSEL-YASKOSKI, and her husband
PETER YASKOSKI, IAN YASKOSKI. their son,
And MARTHA CALCANES, and STEPHEN
CALCANES, her husband, individually, and as
Parents and natural guardians of NICOLE CALCANES,
a minor,

CASE NO:

50 2009 CA 014189 XXXX MB

Plaintiffs,

vs.

ED GIRE d/b/a KEHRER ROOFING & CONSTRUCTION, INC.

Defendant.

RECEIVED COPY FOR FILING

APR 21 2009

SHARON R. BOCK
CLERK & COMPTROLLER
CIRCUIT CIVIL DIVISION

_____

**COMPLAINT FOR DAMAGES**

The Plaintiffs, SHARON OCHS, individually, and as mother and natural

;guardian of NICHOLE OCHS, a minor, JOYCE PESSEL-YASKOSKI, and her husband

PETER YASKOSKI, IAN YASKOSKI. their son. MARTHA CALCANES, STEPHEN

CALCANES, her husband, individually, and as parents and natural guardians of NICOLE

CALCANES, a minor, by and through the undersigned attorney, files their Complaint for

Damages against the Defendant, ED GUIRE d/b/a KEHRER ROOFING &CONSTRUCTION

INC., and as cause therefore states the following:

**GENERAL ALLEGATIONS**

1.    This is a cause of action in excess of Fifteen Thousand ($15,000.00) Dollars, the

minimal jurisdictional limits of this court.

**EXHIBIT**

**A**

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

2.   At all times material hereto, the Plaintiff, SHARON OCHS, resided at 21757 Cantado Road, Boca Raton, Palm Beach County, Florida, and was the mother and natural guardian of NICHOLE OCHS, a minor.

3.   At all times material hereto, JOYCE PESSEL-YASKOSKI, was a resident of Palm Beach County, Florida.

4.   At all times material hereto, the Plaintiff, PETER YASKOSKI, was a resident of Palm Beach County, Florida.

5.   At all times material hereto, JOYCE PESSEL-YASKOSKI and PETER YASKOSKI were husband and wife residing at 21750 Contado Road, Boca Raton, Palm Beach County, Florida.

6.   At all times material hereto the Plaintiff, IAN YASKOSKI, was of majority and resided with his parents JOYCE AND PETER YASKOSKI in their home in Boca Raton, Palm Beach County, Florida.

7.   At all times material hereto, MARTHA CALCANES, was a resident of Palm Beach County, Florida.

8   At all times material hereto, the Plaintiff, STEPHEN CALCANES, was a resident of Palm Beach County, Florida.

9.   At all times material hereto, MARTHA CALCANES and STEPHEN CALCANES were husband and wife residing at 6570 Amarillo Lane, Boca Raton, Palm Beach County, Florida, and were the parents and natural guardian of the Plaintiff, NICOLE CALCENES, a minor.

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

19 of 85

10.    At all times material hereto the Defendant KEHRER ROOFING & CONSTRUCTION INC. was a fictitious name licensed as a Florida corporation to do and doing business in the State of Florida.

11.    At all times material hereto, the fictitious name of KEHRER ROOFING & CONSTRUCTION INC., (hereinafter known as KEHRER) was owned by the Defendant, ED GIRE.

## FACTS GIVING RISE TO THE CAUSE OF ACTION

12.    All of the Plaintiffs reside in Boca Raton, Florida in a development known as Patios in the Park.

13.    Each family owns a villa which consists of two attached homes with separate roofs for which each owner is responsible.

14.    On October 24, 2005, south Florida was struck by Hurricane Wilma. The roofs on the homes owned by the each of the Plaintiff families, the Yaskoski, Calcanes and Ochs, were damaged and required replacement.

15.    During the first half of 2006, the Plaintiffs individually contracted with Defendant, KEHRER, to replace their roofs.

16.    KEHRER replaced the roofs and received the contracted price for their work. Plaintiffs received written warranties for the work.

17.    However, following the first rainy weather, all three of the Plaintiffs' had water leaking into their homes from various locations on their roofs.

18.    Initially representatives from KEHRER attempted to repair the problems, however, every time it rained, the roofs leaked. Eventually KEHRER stopped responding to telephone calls from any of the Plaintiffs, and never completed the repair to the roofs..

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

20 of 85

19. After consulting with other roofing and construction specialists, Plaintiffs learned that KEHRER failed to use flashing, a construction detail, which is used to seal and protect the joints on the roof from water penetration. Whenever it rained, the roofs leaked resulting in both severe water and structural damage to the homes' interiors, and causing various health problems to the Plaintiffs.

## COUNT I – BREACH OF CONTRACT FOR THE CALCANES

20. Plaintiffs, MARTHA and STEVEN CALCANES, reallege and reaver paragraphs 1- 19 as though fully stated herein and further state:

21. Plaintiffs signed a contract with KEHRER for the replacment of their roof. A copy of said contract is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "A."

22. Plaintiffs completed performance, pursuant to the Contract, by making payments to KEHRER.

23. Contrary to the terms of the Contract, Defendant, KEHRER failed to complete the roof in a workman like manner according to standard practices, and is therefore in material breach of the Contract.

24. As a direct and proximate result of Defendant KEHRER'S material breach, Plaintiffs, MARTHA and STEPEN CALCANES have suffered damages, including compensatory, incidental and consequential damages.

WHEREFORE, Plaintiffs MARTHA and STEPEHN CALCANES demand judgment against Defendant ED GIRE d/b/a/ KEHRER ROOFING & CONSTRUCTION Inc., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

21 of 85

## COUNT II – BREACH OF CONTRACT FOR THE YASKOSKIS

25.     Plaintiffs, JOYCE and PETER YASKOSKI, reallege and reaver   paragraphs 1 - 19 as though fully stated herein and further state:

26.     Plaintiffs signed a contract with KEHRER for the replacing of their roof.  A copy of said contract is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "B."

27.     Plaintiffs completed performance, pursuant to the Contract, by making payments to KEHRER.

28.     Contrary to the terms of the Contract, Defendant, KEHRER failed to complete the roof in a workman like manner according to standard practices, and is therefore in material breach of the Contract.

29.     As a direct and proximate result of Defendant KEHRER'S material breach, Plaintiffs, JOYCE and PETER YASKOSKI have suffered damages, including compensatory, incidental and consequential damages.

WHEREFORE, Plaintiffs JOYCE and PETER YASKOSKI demand judgment against Defendant ED GIRE d/b/a/ KEHRER ROOFING & CONSTRUCTION Inc., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT III – BREACH OF CONTRACT FOR SHARON OCHS

30.     Plaintiff, SHARON OCHS, realleges and reavers   paragraphs 1- 19 as though fully stated herein and further state:

31.     Plaintiffs agreed to a proposal with KEHRER for the replacing of her roof a copy of said proposal is attached hereto and incorporated herein by reference as Plaintiff's Exhibit "C."

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

22 of 85

32. Plaintiff completed performance, pursuant to the Contract, by making payments to KEHRER.

33. Contrary to the terms of the Contract, Defendant, KEHRER failed to complete the roof in a workman like manner according to standard practices, and is therefore in material breach of the Contract.

34. As a direct and proximate result of Defendant KEHRER'S material breach, Plaintiff, SHARON OCHS has suffered damages, including compensatory, incidental and consequential damages.

WHEREFORE, Plaintiff SHARON OCHS demands judgment against Defendant ED GIRE d/b/a/ KEHRER ROOFING & CONSTRUCTION Inc., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT IV – VIOLATION OF FLORIDA BUILDING CODE-COMMON TO ALL PLAINTIFFS

35. The Plaintiffs, hereby adopt and reallege paragraphs 1 through 19 as if fully stated herein and further states:

36. Pursuant to the Florida Building Code, Residential § R907.1, "Reroofing shall be done in accordance with the Florida Existing Building Code."

37. Pursuant to the Florida Building Code, Weather Protection § R903.2, "Flashings shall be installed in such a manner so as to prevent moisture entering the wall and roof through joints in copings, through moisture permeable materials, and at intersections with parapet walls and other penetrations through the roof plane."

38. Pursuant to the Florida Building Code § R903.2.1"Flashings shall be installed at wall and roof intersections; wherever there is a change in roof slope or direction; this requirement does not apply to hip and ridge junctions, and around roof openings."

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

23 of 85

39.    Defendant has violated the Florida Building Code by not replacing the roofs on Plaintiffs' homes in compliance with the Florida Building Code and other regulatory codes of Broward County and the State of Florida.

40.    Due to the Defendants' noncompliance with these requirements, Plaintiffs' roofs continued to leak causing water damage to the interior of the Plaintiffs' homes, and to their health as more fully explained below.

WHEREFORE, The Plaintiffs, SHARON OCHS, individually, and as mother and natural guardian of NICHOLE OCHS, a minor, JOYCE PESSEL-YASKOSKI, and her husband PETER YASKOSKI, IAN YASKOSKI. their son. MARTHA CALCANES, STEPHEN CALCANES, her husband, individually, and as Parents and guardians of NICOLE CALCANES, a minor, demand judgment against Defendant ED GIRE d/b/a KEHRER ROOFING & CONSTRUCTION Inc., for damages, including compensatory, incidental and consequential damage costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT V – NEGLIGENCE – NICOLE OCHS

41. Plaintiff, SHARON OCHS individually and as the mother and natural guardian of NICOLE OCHS, readopts and realleges paragraphs 1-19 as if fully set forth herein and further states as follows:

42. At all times material hereto, Defendant, KEHRER, INC., had a duty to use reasonable care in repairing Plaintiff, SHARON OCHS's roof by acting as a reasonably prudent roofing company.

43. Defendant, KEHRER, INC., breached said duty of exercising reasonable care owed to Plaintiff, SHARON OCHS by failing to install flashing when replacing her roof.

44. As a direct and proximate result of said breach of duty, her roof continued to leak causing water damage to various areas in the interior of her home.

45. This damage created an unhealthy atmosphere within the home which sickened NICOLE OCHS causing her to suffer constant headaches, sore throats, allergies which have requires medical treatment.

46. As a result of KEHRER'S negligence, NICOL OCHS has suffered health problems and her overall well-being has been comprised.

47. Plaintiff, SHARON OCHS, has expended money for the care and treatment of her daughter.

WHEREFORE, Plaintiff SHARON OCHS individually and as natural guardian and mother of NICOLE OCHS demands judgment against Defendant KEHRER ROOFING & CONSTRUCTION INC., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT VI – NEGLIGENCE – CALCANES

48. Plaintiffs, MARTHA and STEPHEN CALCANES individually and as natural parents and guardians of NICOLE CALCANES, readopt and reallege paragraphs 1-19 as if fully set forth herein and further states as follows:

49. At all times material hereto, Defendant, KEHRER, INC., had a duty to use reasonable care in repairing Plaintiffs' roof by acting as a reasonably prudent roofing company.

50. Defendant, KEHRER, INC. breached said duty of exercising reasonable care owed to Plaintiffs by failing to install flashing when replacing their roof.

51. As a direct and proximate result of said breach of duty, their roof continued to leak causing water damage to various areas in the interior of their home.

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

25 of 85

52. This damage created an unhealthy atmosphere within the home which sickened MARTHA CALCANES, STPEHEN CALCANES, and their daughter NICOLE CALCENS causing them to suffer headaches, colds, sore throats, allergies and other ailments which have required medical treatment.

53. As a result of KEHRER'S negligence, all of the CALCANES have suffered health problems and their overall well-being has been comprised.

54. Plaintiffs have expended money for the care and treatment of their ailments.

WHEREFORE, Plaintiffs, MARTHA and STEPHEN CALCANES individually and as natural parents and guardians of NICOLE CALCANES demand judgment against Defendant KEHRER ROOFING & CONSTRUCTION INC., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT VII – NEGLIGENCE – IAN YASKOSKI

55. Plaintiff, IAN YASKOSKI, readopts and realleges paragraphs 1-19 as if fully set forth herein and further states as follows:

56. At all times material hereto, Defendant, KEHRER, INC., had a duty to use reasonable care in repairing the roof at the YASKSOKI home by acting as a reasonably prudent roofing company.

57. Defendant, KEHRER, INC. breached said duty of exercising reasonable care owed to the YASKOSKIS by failing to install flashing when replacing their roof.

58. As a direct and proximate result of said breach of duty, their roof continued to leak causing water damage to various areas in the interior of their home.

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

26 of 85

59. This damage created an unhealthy atmosphere within the home which sickened IAN YASKOSKI causing him to suffer colds, headaches, sore throats, allergies which has required medical treatment.

60. As a result of KEHRER'S negligence, IAN YASKOSKI has suffered health problems and his overall well-being has been comprised.

61. Plaintiff, IAN YASKOSKI has expended money for his care and treatment.

WHEREFORE, Plaintiff, IAN YASKOSKI, demands judgment against Defendant KEHRER ROOFING & CONSTRUCTION INC., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## COUNT VIII – NEGLIGENCE – JOYCE and PETER YASKOSKI

62. Plaintiffs, JOYCE and PETER YASKOSKI, readopts and realleges paragraphs 1-19 as if fully set forth herein and further states as follows:

63. At all times material hereto, Defendant, KEHRER, INC., had a duty to use reasonable care in repairing the roof at the YASKSOKI home by acting as a reasonably prudent roofing company.

64. Defendant, KEHRER, INC. breached said duty of exercising reasonable care owed to the YASKOSKIS by failing to install flashing when replacing their roof.

65. As a direct and proximate result of said breach of duty, their roof continued to leak causing water damage to various areas in the interior of their home.

66. This damage created an unhealthy atmosphere within the home which sickened JOYCE AND PETER YASKOSKI causing them to suffer colds, headaches, sore throats, allergies which has required medical treatment.

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

27 of 85

67. As a result of KEHRER'S negligence, JOYCE AND PETER YASKOSKI have suffered health problems and their overall well-being has been comprised.

68. Plaintiffs, JOYCE AND PETER YASKOSKI has expended money for their care and treatment.

WHEREFORE, Plaintiff IAN YASKOSKI individually and as natural guardian and mother demands judgment against Defendant KEHRER ROOFING & CONSTRUCTION INC., for damages and costs, pre-judgment interest, where applicable, and any further relief this Court deems just and proper.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was served on Defendants along with the Summons and Complaint.

Dated this **17** day of **APRIL**, 2009.

TOPKIN & EGNER, P.L.
Attorneys for Plaintiffs
1166 W. Newport Center Dr., Suite 309
Deerfield Beach, FL 33442
Phone (954) 422-8422
Fax:   (954) 422-5455

By: _____
   CATHY R. BIERMAN, ESQ.
   FBN: 0008151

TOPKIN & EGNER, P.L.
1166 W. NEWPORT CENTER DR. SUITE 309 · DEERFIELD BEACH, FL 33442
TELEPHONE (954)-422-8422 · FAX (954)-422-5455

28 of 85

# PLAINTIFF'S EXHIBIT

# "A"



**KEHRER**
**ROOFING & CONSTRUCTION**

## INVOICE

TOLL FREE 1-800-298-9170
Ph: (561) 434-7606
Fax:  (561) 433-9465
CELL(561)-584-4159

FLORIDA LICENSE # CCC058135                     6720 43RD AVE. S LAKE WORTH, FL 33463

| CUSTOMER NAME STEPHEN CALCANES | PHONE 561-901-3473 | DATE 04/07/06 |
|---|---|---|
| JOB ADDRESS 6570 AMARILLO LN | CONTACT | |
| CITY,STATE& ZIPCODE BOCA RATON, FL.  33433 | JOB LOCATION | PROPOSAL NO. 106-204 |

### MATERIALS

| | | | |
|---|---|---|---|
| 21 | SQ. OF 40 YEAR TERRA COTTA SHINGLES | | |
| 2 | 40 YEAR RIDGE CAP | | |
| 20 | ROLL OF UV BLACKPAPER 30 POUND FELT | | |
| 1 | POUNDS OF 8D SHEATING NAILS | | |
| 1 | BOXES OF ROOFING NAILS | | |
| 4 | BOXES OF TIN TAG SIMPLEX NAILS | | |
| 1 | TUBES OF SILICONE | | |
| 4 | 2" LEAD PIPE FLASHING | | |
| 2 | 3" LEAD PIPE FLASHING | | |
| 10 | PIECES OF WHITE 2" GAL. STEEL DRIP EDGE | | |
| 35 | FEET OF RIDGE VENT | | |
| | SQ. OF BRAI MODIFIED ROOFING (TORCH DOWN) | | |
| | ROLLS OF BASE SHEET | | |
| | TANKS OF PROPANE | | |
| | TRASH REMOVAL INCLUDED | TOTAL | $10,050.00 |

REPLACED 80 FEET OF FASCIA FOR $800.00 COST PER FOOT $10.00          TOTAL     $800.00

2- FREE SHEETS OF PLYWOOD

ADDITIONAL CHARGE
REPLACED 25 SHEETS OF PLYWOOD I WILL CHARGE
FOR 23 SHEETS AT $65.00 PER SHEET          TOTAL     $1,495.00

INSTALLED 220 FEET OF FASCIA AT $10.00 PER FOOT
YOU ALREADY HAD 80 FEET INCLUDED IN THIS PRICE
TOTAL LEFT WAS 140 FEET NOT FIGURED AT $10.00 PER
FOOT.          TOTAL     $1,400.00

_40' at 10,00 per feet  Total $400,00_
_Deduct $110.00  for Phone wire Damage_

$ 12745,00

PAYMENT TERMS, 5 DAYS FROM
DATE ON THIS INVOICE.          GRAND TOTAL: $13,745.00

12745.00
− 100,00
T.f.1          $ 12,635 00  EJb

CITIZENS PROPERTY INSURANCE CORPORATION

## FLORIDA BUILDING CODE WALL & ROOFING MITIGATION VERIFICATION
## AFFIDAVIT

Applicant(s): _STEPHEN + MARTHA CALCANES_     Policy No: _—_

Property Address: _6570 AMARILLO LN_
_BOCA RATON, FL 33433_

Installation Date: _05/01/2006_

### Specify the type of mitigation device(s) installed:

---

**Roof Coverings**

☒ **FBC Equivalent**
Asphalt roof coverings installed in accordance with ASTM D 3161 (modified for 110 mph) or Miami Dade County PA 107-95.

☐ **Non-FBC Equivalent**
Asphalt roof shingles not meeting requirements listed above for FBC Equivalent and all other roof covering types.

☐ **Reinforced Concrete Roof Deck**
A roof structure composed of cast-in-place or pre-cast structural concrete designed to be self-supporting and integrally attached to wall/support system.

---

**Roof Shape**

☐ **Hip**
Roof having sloping ends and sloping sides down to the eaves line.

☒ **Other**
All other roof shapes except hip (i.e. Flat, Gable, Gambrel, etc.).

---

**Secondary Water Resistance**

☐ **Underlayment**
A self-adhering polymer modified bitumen roofing underlayment (thin rubber sheets with peel and stick underside located beneath the roof covering and normal felt underlayment) with a minimum width of 6" meeting the requirements of ASTM D 1970 installed over all plywood/OSB joints to protect from water intrusion.  All secondary water resistance products must be installed per the manufacturer's recommendations.  Roofing felt or similar paper based products are not acceptable for secondary water resistance.

☐ **Foamed Adhesive**
A foamed polyurethane sheathing adhesive applied over all joints in the roof sheathing to protect interior from water intrusion.

---

**Roof-Wall Connection**

☐ **Toe-Nail**
Rafter/truss anchored to top plate of wall using nails driven at an angle through the rafter/truss and attached to the top plate of the wall.

☐ **Clips**
Metal clips installed on each truss/rafter that attach to the side only of the truss/rafter member and to the wall frame.  Metal clip should be free of severe corrosion, have a minimum of 3 nails into the truss/rafter and 3 nails into the wall.

☒ **Single Wraps**
Metal straps installed on each truss/rafter that wrap over the top of the truss/rafter and attach to the wall frame in one location.  Metal strap should be free of severe corrosion, have a minimum of 3 nails into the truss/rafter and 3 nails into the wall.

☐ **Double Wraps**
Metal straps installed on each truss/rafter that wrap over the top of the truss/rafter and attach to the wall frame in two locations.  Metal strap should be free of severe corrosion, have a minimum of 3 nails into the truss/rafter and 3 nails into the wall at each location.

---

MIT-4 (03/2005)                                                      1 of 2 pages

*3 wks*
*-$125*
*Telephone*

*+1625  25 PCS.*
*10,850*
*12,475*

# KEHRER
## ROOFING & CONSTRUCTION

## PROPOSAL
TOLL FREE 1-800-298-9170
Ph: (561) 434-7606
Fax: (561) 433-9465
CELL(561)-584-0315
PROJECT MANAGER    FRANK PAGE

**FLORIDA LICENSE # CCC058135**

6720 43RD AVE. S LAKE WORTH, FL 33463

| CUSTOMER NAME | PHONE | DATE |
|---|---|---|
| STEPHEN CALCANES | 561-901-3473 | 03/09/06 |

| JOB ADDRESS | CONTACT | |
|---|---|---|
| 6570 AMARILLO LN | | |

| CITY, STATE& ZIPCODE | JOB LOCATION | PROPOSAL NO. |
|---|---|---|
| BOCA RATON | | |

### MATERIALS

| | |
|---|---|
| 21 | **40 YEAR TERRA COTTA SHINGLES** |
| 2 | **40 YEAR RIDGE CAP** |
| 20 | **ROLLS OF BLACKPAPER (30 POUND FELT)** |
| 1 | **POUNDS OF 8D SHEATING NAILS** |
| 1 | **BOXES OF ROOFING NAILS** |
| 1 | **BOXES OF SIMPLEX NAILS** |
| 4 | **2" LEAD PIPE FLASHING** |
| 2 | **3" LEAD PIPE FLASHING** |
| 10 | ~~**BROWN ALUMINUM ROOF VENTS**~~  *DRIP Edge FP* |
| 35ft | **RIDGE VENT** |
| | **REMOVE TURBINS** |
| 3 | **HOT STACKS** |
| 6 | **SQ. OF BRAI MODIFIED ROOFING (TORCH DOWN)** |
| | **ROLLS OF BASE SHEET** |
| | **TANKS OF PROPANE**  *Replace Fascia* |

*800*

**TRASH REMOVAL INCLUDED**

**JOB WILL INCLUDE REMOVAL OF EXISTING SHINGLES
AND REPLACING WITH MATERIALS ABOVE.**

**IF PLYWOOD IS NEEDED AN ADDITIONAL CHARGE OF
$65.00 PER SHEET, LABOR & MATERIALS INCLUDED.**

*FRee 2 sheets of PLYwood*

**We Propose:** *hereby to furnish material and labor-complete in accordance with above specifications, for the sum of:*    **$18,050.00**  *10,850*

**Payment to be made as follows:**
*Upon completion. Prompt remittance would be appreciated. 2% finance charge on all accounts 5 days past due.
Annual charge 24%. Customer will be responsible for all collection costs, including reasonable attorneys fees.*

*All material is guaranteed to be as specified. All work to be completed in a workmanlike
manner according to standard practices. Any deviation from above specifications
involving extra costs will be executed only upon written orders, and will become an extra
charge over and above the estimate. All agreements contingent upon strikes, accidents
or delays beyond our control. Owner to carry fire, tornado and other necessary insurance.
Our workers are fully covered by Workmen's Compensation Insurance.*

Authorized
Signature:  *Frank Page*
Note: This proposal may be
withdrawn by us if not accepted by
**05/08/06**

### Acceptance of Proposal ~
*The above prices, specifications and conditions are satisfactory and are
hereby accepted. You are authorized to do the work as specified.
Payment will be made as outlined*

Signature

Date of Acceptance:
Signature
*If you wish to accept this proposal, you must return a signed copy prior to completion of work performed.*

*Ed Guyer*    *$300*    *110  Joe myers
110    2172024503*

# PLAINTIFF'S EXHIBIT

# "B"



**PROPOS**

TOLL FREE 1-800-298-9170

·Ph: (561) 434-7606

Fax: (561) 433-9468

CELL(561)-584-0315

PROJECT MANAGE    **FRANK PAGE**

**FLORIDA LICENSE # CCC058135**                    6720 43RD AVE. S LAKE WORTH, FL 33463

| CUSTOMER NAME | PHONE | DATE |
|---|---|---|
| *PETER JOYCE YASKOSKI* | 561-955-1219 | 03/08/06 |
| JOB ADDRESS | CONTACT | |
| *21750 CONTADO RD* | 561-818-7876 | |
| CITY,STATE& ZIPCODE | JOB LOCATION | PROPOSAL NO. |
| *BOCA RATON* | | |

## MATERIALS

| | |
|---|---|
| 18 | 40 YEAR TERRA COTTA OWENS CORNING |
| 2 | BUNDLES OF RIDGE CAP |
| 8 | ROLLS OF BLACKPAPER (30 POUND FELT) |
| 1 | POUNDS OF 8D SHEATING NAILS |
| 1 | BOXES OF ROOFING NAILS |
| 1 | BOXES OF SIMPLEX NAILS |
| 2 | 2" LEAD PIPE FLASHING |
| 1 | 3" LEAD PIPE FLASHING |
| 16 | BROWN ALUMINUM ROOF VENTS |

4    SQ. OF BRAI MODIFIED ROOFING (TORCH DOWN)
ROLLS OF BASE SHEET
TANKS OF PROPANE

TRASH REMOVAL INCLUDED
JOB WILL INCLUDE REMOVAL OF EXISTING SHINGLES
AND REPLACING WITH MATERIALS ABOVE.

IF PLYWOOD IS NEEDED AN ADDITIONAL CHARGE OF
$65.00 PER SHEET, LABOR & MATERIALS INCLUDED.

**We Propose:** hereby to furnish material and labor complete in accordance with above specifications, for the sum of:    **$7,650.00**

Payment to be made as follows:

Payment upon completion. Prompt remittance would be appreciated. 2% finance charge on all accounts 5 days past due. Annual charge 24%. Customer will be responsible for all collection costs, including reasonable attorneys fees.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized
Signature:
Note: This proposal may be
withdrawn by us if not accepted by
05/07/06

**Acceptance of Proposal ~**

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified.

Payment will be made as outlined

Date of Acceptance:  4/28/06

Signature *Peter Yaskoski*

Signature

If you wish to accept this proposal, you must return a signed copy prior to completion of work performed.



## KEHRER
## ROOFING & CONSTRUCTION

**INVOICE**
TOLL FREE 1-800-298-9170
Ph: (561) 434-7606
Fax: (561) 433-9465
CELL(561)-584-4159

**FLORIDA LICENSE # CCC058135**     6720 43RD AVE. S LAKE WORTH, FL 33463

| CUSTOMER NAME | PHONE | DATE |
|---|---|---|
| PETER JOYCE YASKOSKI | | 06/06/06 |
| JOB ADDRESS | CONTACT | |
| 21750 CONTADO RD | | |
| CITY,STATE& ZIPCODE | JOB LOCATION | PROPOSAL NO. |
| BOCA RATON, FL. | | 106-252 |

### MATERIALS

**JOB INCLUDED REMOVAL OF EXISTING SHINGLES**
**& INSTALLING NEW 40 YEAR CERTAINTEED SHINGLES**     TOTAL     $7,650.00

**ADDITIONAL CHARGE**
**REPLACED 18 SHEETS OF PLYWOOD AT $50.00 PER SHEE**     TOTAL     $900.00

**REPLACED 7 1X2X8 FASCIA BOARDS**     TOTAL     $140.00

**PAYMENT TERMS, 5 DAYS FROM**
**DATE ON THIS INVOICE.**     | GRAND TOTAL: | $8,690.00 |

# PLAINTIFF'S EXHIBIT

# "C"



**KEHRER**
ROOFING & CONSTRUCTION

## PROPOSAL
TOLL FREE 1-800-298-9170
Ph: (561) 434-7608
Fax: (561) 433-9468
CELL (561) 584-4159

FLORIDA LICENSE # CCC058135

6720 43RD AVE. S LAKE WORTH, FL 33463

| CUSTOMER NAME: SHARON OCHS | PHONE (561) 929-0960 | DATE 01/20/06 |
|---|---|---|
| JOB ADDRESS 21757 CANTADO RD | CONTACT | |
| CITY, STATES & ZIPCODE BOCA RATON, FLA | JOB LOCATION | PROPOSAL NO. 06-100 |

### MATERIALS

| | | |
|---|---|---|
| 20 | SQ. OF CERTAINTEED LANDMARK AR 40 YEAR SHINGLES | |
| 1 | BUNDLES OF CERTAINTEED AR 40 YEAR RIDGE CAP | |
| 10 | ROLLS OF BLACKPAPER (30 POUND FELT) | |
| 1 | BOXES OF ROOFING NAILS | |
| 15 | PIECES OF WHITE 2" GAL. STEEL DRIP EDGE | |
| 3 | 2" LEAD PIPE FLASHING | |
| 1 | 3" LEAD PIPE FLASHING | |
| 1 | ROLLS OF 20" GALVANIZED VALLEY FLASHING | |
| 7 | COBRA SNOW COUNTRY RIDGE VENT | $6,500.00 |
| | | |
| | FLAT ROOF | |
| | REMOVE EXISTING FLAT ROOF | |
| | REPLACE ANY ROTTEN WOOD | |
| | INSTALL NEW RECOVERY BOARD | |
| | INSTALL FULLY ADHERED T.P.O. MEMBRANE ROOF | |
| | TERMINATE PERIMETER | $2,635.00 |
| | | |
| 1 | TRASH REMOVAL INCLUDED | |
| | JOB WILL INCLUDE REMOVAL OF EXISTING SHINGLES | |
| | AND REPLACING WITH MATERIALS ABOVE. | |
| | | |
| | ROOF WILL COME WITH A 10 YEAR LABOR WARRANTY & 40 | |
| | YEAR SHINGLE WARRANTY THROUGH CERTAINTEED MANUFACTURING CO. | |
| | $65.00 PER SHEET, LABOR & MATERIALS INCLUDED, | |
| | IF PLYWOOD IS NEEDED AN ADDITIONAL CHARGE OF | |
| | NOTE* OPTION FOR TORCHDOWN FOR FLAT ROOF DEDUCT $300.00 | |

**We Propose:** hereby to furnish material and labor complete in accordance with above specifications, for the sum of: **$9,135.00**

Payment to be made as follows:

Payment upon completion. Prompt remittance would be appreciated. 2% finance charge on all accounts 5 days past due.

Annual charge 24%. Customer will be responsible for all collection costs, including reasonable attorneys fees.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature:

NOTE: This proposal may be withdrawn by us if not accepted by **03/21/06**

### Acceptance of Proposal —
The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified.

Payment will be made as outlined

Date of Acceptance:

Signature

Signature

If you wish to accept this proposal, you must return a signed copy prior to completion of work performed.



**PROPOSAL**

TOLL FREE 1-800-298-9170

Ph: (561) 434-7606

Fax: (561) 433-9465

CELL (561) 584-4159

**KEHRER**

**ROOFING & CONSTRUCTION**

FLORIDA LICENSE # CCC059135

6720 43RD AVE, S LAKE WORTH, FL 33463

| PHONE | | DATE |
| --- | --- | --- |
| | | 01/21/06 |

| CUSTOMER NAME | | CONTACT | |
| --- | --- | --- | --- |
| JOB ADDRESS | | | |
| CITY, STATE & ZIP CODE | | JOB LOCATION | PROPOSAL NO. |

**MATERIALS**

JOB WILL INCLUDE REMOVAL OF EXISTING SHINGLES
AND REPLACING WITH MATERIALS ABOVE.
JOB WILL INCLUDE REROOFING OVER EXISTING
ROOF WILL COME WITH A 10 YEAR LABOR WARRANTY & 30
YEAR SHINGLE WARRANTY THROUGH GAF MANUFACTURING CO.
ROOF WILL COME WITH A 10 YEAR LABOR WARRANTY & 25
IF PLYWOOD IS NEEDED AN ADDITIONAL CHARGE OF
$65.00 PER SHEET, LABOR & MATERIALS INCLUDED.

[VALUE]
0

$0.00

**We Propose:** hereby to furnish material and labor-complete in accordance with above specifications, for the sum of:

$0.00

**Payment to be made as follows:**

Payment upon completion. Prompt remittance would be appreciated. 2% finance charge on all accounts 5 days past due.

Annual charge 24%. Customer will be responsible for all collection costs, including reasonable attorneys fees.

All material is guaranteed to be as specified. All work to be completed in a workmanlike manner according to standard practices. Any deviation from above specifications involving extra costs will be executed only upon written orders, and will become an extra charge over and above the estimate. All agreements contingent upon strikes, accidents or delays beyond our control. Owner to carry fire, tornado and other necessary insurance. Our workers are fully covered by Workmen's Compensation Insurance.

Authorized Signature:

Note: This proposal may be withdrawn by us if not accepted by 03/22/06

**Acceptance of Proposal —**

The above prices, specifications and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified.

Payment will be made as outlined.

Date of Acceptance:

Signature

Signature.

If you wish to accept this proposal, you must return a signed copy prior to completion of work performed.

P.002/002    (FAX)954 876 2785    Special Care Unit at NBMC    10:01 (TUE)2009-07-APR



Essex
Insurance
Company

# Insurance Policy

EXHIBIT

B

In consideration of the payment of the Premium, in reliance upon the statements made to the Company by application and subject to the terms set forth herein, the Company designated on the Declarations page (A Capital Stock Company), herein called the Company, AGREES with the Insured:

## COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions:

**A. CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:
   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed proof of mailing will be sufficient proof of notice.

**B. CHANGES**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. EXAMINATION OF YOUR BOOKS AND RECORDS**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. INSPECTION AND SURVEYS**

We have the right but are not obligated to:
1. Make inspections and surveys at any time;
2. Give you reports on the conditions we find; and
3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public.

And we do not warrant that conditions:

1. Are safe or healthful; or
2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**E. PREMIUMS**

The first Named Insured shown in the Declarations:
1. Is responsible for the payment of all premiums; and
2. Will be the payee for any return premiums we pay.
3. Premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

**F. PREMIUMS, MINIMUM DEPOSIT AND AUDIT**

All references in this policy to minimum and/or deposit premiums and premium audits is replaced by the following, as respects casualty:

Premium shown as advanced premium is both a deposit premium and a minimum premium for the policy term. At the close of each audit period we will compute earned premium for that period. If earned is more than advance premium then the amount by which it exceeds advance premium is due and payable on notice to you. If earned is less, advance premium applies as the minimum premium with no return payable to you.

If this policy is cancelled the pro rata or short rate of the minimum and deposit premium will apply for the policy term, subject to an absolute minimum earned premium of 25% of the total advance premium, unless final audit develops greater than said 25%. If your business is a seasonable business, however, the minimum premium then becomes fully earned at the end of your season.

**G. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

This policy is not valid unless a Declarations Page and Coverage Form is attached.

## NUCLEAR ENERGY LIABILITY EXCLUSION

**1.    The Insurance does not apply:**

A.    Under any Liability Coverage, to "bodily injury" or "property damage:"

(1)    With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limits of liability; or

(2)    Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.    Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C.    Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material;" if

(1)    The "nuclear material" (a) is at any "nuclear facility" owned by or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2)    The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured;" or

(3)    The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility," but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

**2.    As used in this endorsement**

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material," "special nuclear material," or "by-product material."

"Source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor."

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."

"Nuclear facility" means:
(a)    Any "nuclear reactor;"
(b)    Any building, premises or property owned, leased, loaned or used by or on behalf of the insured where "hazardous properties", "nuclear material" or "radioactive material" is used, processed or stored or has been discharged or dispersed therefrom;
(c)    Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel" or (3) handling, processing or packaging "waste;"
(d)    Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;
(e)    Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste;" and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

## SERVICE OF SUIT

It is agreed that in the event of a failure of this Company herein to pay any amount claimed to be due hereunder, this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, or his nominee, at 4521 Highwoods Parkway, Glen Allen, VA 23060-6148 and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the even of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## PRIVACY NOTICE

We collect nonpublic personal information about you from the following sources:
- Information we receive from you on applications or other forms; and/or
- Information about your transactions with us, our affiliates, or others; and/or
- Information we receive from a consumer reporting agency; and/or
- Information we receive from Inspection reports.

We do not disclose any nonpublic personal information about our customers or former customers to anyone, except as permitted by law.

**We may disclose any nonpublic personal information about you to the following types of third parties:**
- Financial service providers, such as insurance agents and/or brokers

We may also disclose nonpublic personal information about you to non-affiliated third parties as permitted by law.

We restrict access to nonpublic personal information about you to those employees who need to know that information to provide products or service to you. We maintain physical, electronic, and procedural safeguards that comply with federal standards to guard your nonpublic personal information.

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.


**Secretary**                                  **President**


Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright. Insurance Services Office, Inc 1982, 1983


011-1054 (Rev10-03)



# ESSEX INSURANCE COMPANY

COMMERCIAL LIABILITY DECLARATIONS

3CP3236
Renewal of Number

**Policy Number**
3CS5114

*NOTICE TO POLICYHOLDER:  This contract is issued pursuant to Section 445 of the Illinois Insurance Code by a company not authorized and licensed to transact business in Illinois and as such is not covered by the Illinois Insurance Guranty Fund.*

**Item 1. Named Insured and Mailing Address:**

Gire Construction, Inc
c/o Ed Gire Jr.
101 N. Sycamore
Villa Grove, IL  61956

**Item 2.  Policy Period    From: 09/03/2005        To: 09/03/2006        Term: Annual**
      **12:01 A.M. Standard Time at the address of the Named Insured as stated herein.**

**Item 3.    Retroactive Date:** _____

**Item 4.    Business Description:** General Contractor

**Item 5.    In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.**

**This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.**

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| **Commercial General Liability Coverage Part** | 011-1061(8-02) | $ ▮▮▮▮ |
| **Professional Liability Coverage Part** |  | $ |
| Terrorism Coverage |  | $ |
|  |  | $ |
|  |  | $ |
| Broker Fee (Fully Earned)· |  | $ ▮▮▮▮ |
| IL SL Tax |  | $ ▮▮▮▮ |
| IL Stamping Fee |  | $ ▮▮▮▮ |
| Audit Period Annual unless otherwise stated: _____ | Total | $ ▮▮▮▮ |

**Item 6.    Forms and endorsements applicable to all Coverage Parts:** 011-1054(20-03), 011-1087(09-97), 011-1061(08-02)
                                                    SHOW NUMBERS

IL0284 (all)

Agent Name and Address: CIU  PO Box 2005  Springfield, MO 65808-9005
Agent Number: 100750
        Wendy A. Kroutil, Ext 207  wkroutil@ciusgf.com  Andrea Mitchell, Ext 261  amitchell@ciusgf.com

Countersigned  10/20/2005  AFM    By
               DATE                                  AUTHORIZED REPRESENTATIVE

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS,TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

COMPANY

011-1056 (9-93)



**ESSEX INSURANCE COMPANY**

MARKEL

## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number __3CS5114__

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (other than Products/Completed Operations) | $ 2,000,000 |
| Products/Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Damage to Rented Premises | $ 50,000   Each Occurrence |
| Medical Expense Limit | $ Excluded   Any One Person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES COVERED BY THIS POLICY

Form of business:
☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (other than Partnership or Joint Venture)

Location of all premises you own, rent or occupy: 101 N. Sycamore, Villa Grove, IL  61956

### PREMIUM

| Description of Hazards/ Insured Classification(s) | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Contractors-NOC | 94444 | s) ▓▓▓▓▓ | Incl | ▓▓▓ | $ Incl | $ ▓▓▓▓ |

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

TOTAL ADVANCE PREMIUM  $ ▓▓▓▓▓▓

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

011-1054(10-03), 011-1087(09-97), ME-001(01-05), ME-002(01-05), ME-043(01-05), ME-048(04-99), ME-051(04-99), ME-143(04-99), REDEVEX(09-00), CG 00 01 (10-01), CG 21 69 (01-02)

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

011-1061 (8-02)                                     COMPANY



## ESSEX INSURANCE COMPANY

**MARKEL**

## ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *Attached To and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued to |
|---|---|---|
| 3CS5114 | 09/03/2006 | Gire Construction, Inc.; Kehrer Construction Inc.; Gire Equipment Leas |

## PREMIUM ADJUSTMENT ENDORSEMENT

In accordance with the premium and audit provisions stated in this policy, the premium is adjusted for the period of:

09/03/2005 __ to __ 09/03/2006

| CLASSIFICATION | CODE | AUDIT EXPOSURE See Key Below | RATE | AUDIT PREMIUM |
|---|---|---|---|---|
| Contractors - NOC | 94444 | s) ██████ | ██████ | $██████ |
| Illinois Surplus Lines Tax:      $█████ | | | | |
| Illinois Stamp Fee:      $███ | | | | |

**AUDIT EXPOSURE CODE**

| | | | |
|---|---|---|---|
| a. | Area | s. | Gross Sales |
| c. | Total Cost | t. | See Classification |
| m. | Admissions | u. | Units |
| p. | Payroll | | |

**TOTAL**
$7█████

**Less Deposit or other credit** ██████

**Additional Premium**  $██████

**Return Premium**

All other Terms and Conditions of this Policy remain unchanged.

011-1090 (10/97)                    COMPANY



**ESSEX INSURANCE COMPANY**

# ENDORSEMENT
#01

*The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 01/20/2006 | Gire Construction, Inc c/o Ed Gire Jr. |

In consideration of the premium charged, it is hereby agreed, the named insured is amended to read as Gire Construction, Inc. and Kehrer Construction, Inc.

* No change in premium.

Endorsement #01
Wendy Kroutil, Ext. 207 wkroutil@ciusgf.com
Angel Aston, Ext. 273 aaston@ciusgf.com
3/1/06

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

AUTHORIZED REPRESENTATIVE



## ESSEX INSURANCE COMPANY

## ENDORSEMENT
#2

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 06/16/2006 | Gire Construction, Inc and Kehrer Construction, Inc. |

In consideration of an additional premium of $100.00 it is hereby agreed Sun Belt Rentals is added to the policy as an Additional Insured per the attached form M/E-009 (4/99) Additional Insured Endorsement.

It is further agreed, The named insured is amended to read as Gire Construction, Inc. and Kehrer Construction, Inc. and Gire Equipment Leasing.

All other terms and conditions remain unchanged.

Additional Premium: $█████ (Fully Earned)
IL S/L Tax:          $█████

07/21/2006
Ruth Elledge, Ext 227  relledge@ciusgf.com
Teresa Cheek, Ext 273  tcheek@ciusgf.com

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

_____
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)          COMPANY





**ESSEX INSURANCE COMPANY**

## ENDORSEMENT
#3

*The following spaces preceded by an asterisk (\*) need not be completed if this endorsement and the policy have same inception date.*

| ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 07/31/2006 | Gire Construction, Inc.; Kehrer Construction Inc.; Gire Equipment Leas |

In consideration of an additional premium of $100.00 it is hereby agreed Queen Anne Properties, Inc. is added to the policy as an Additional Insured per the attached form M/E-009 (4/99) Additional Insured Endorsement.


All other terms and conditions remain unchanged.


Additional Premium: $▮▮▮▮▮ (Fully Earned)
IL S/L Tax:        $▮▮▮▮
IL Stamping Fee:   $▮▮▮▮




08/28/2006
Ruth Elledge, Ext 227   relledge@ciusgf.com
Teresa Cheek, Ext 273   tcheek@ciusgf.com




Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as above stated.

Authorized Representative

*In Witness Whereof,* the Company has caused this endorsement to be signed by a duly authorized representative of the Company

_____
AUTHORIZED REPRESENTATIVE

011 - 1009 (7-80)          COMPANY

 

 **ESSEX INSURANCE COMPANY**

**ADDITIONAL INSURED ENDORSEMENT**

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *\*ATTACHED TO AND FORMING PART OF POLICY NO.* | *\*EFFECTIVE DATE OF ENDORSEMENT* | *\*ISSUED TO* |
|---|---|---|
| 3CS5114 | 07/31/2006 | Gire Construction, Inc.; Kehrer Construction Inc.; Gire Equipment Leas |

**THIS ENDORSEMENT CHANGES THE POLICY.**

**SECTION II - WHO IS AN INSURED** of the Commercial General Liability Form is amended to include:

Person or Entity:
Queen Anne Properties, Inc.
1129 Johnson Dr.
Naperville, IL   60540

Interest of the Above:
Additional Insured

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium:

$ ▓▓▓▓▓▓

_____  /
AUTHORIZED REPRESENTATIVE        DATE

M/E-009 (4/99)

COMPANY



## ESSEX INSURANCE COMPANY

## ADDITIONAL INSURED ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 06/16/2006 | Gire Construction, Inc and Kehrer Construction, Inc. |

**THIS ENDORSEMENT CHANGES THE POLICY.**

**SECTION II - WHO IS AN INSURED** of the Commercial General Liability Form is amended to include:

Person or Entity:
Sun Belt Rentals
3701 NW 120th Ave.
Coral Spring, FL   33065

Interest of the Above:
Lessor of equipment

as an additional insured under this policy, but only as respects negligent acts or omissions of the Named Insured and only for occurrences, claims or coverage not otherwise excluded in the policy.

It is further agreed that where no coverage shall apply herein for the Named Insured, no coverage nor defense shall be afforded to the above-identified additional insured.

Moreover, it is agreed that no coverage shall be afforded to the above-identified additional insured for any "bodily injury," "personal injury," or "property damage" to any employee of the Named Insured or to any obligation of the additional insured to indemnify another because of damages arising out of such injury.

Additional Premium:

$

_____   /
AUTHORIZED REPRESENTATIVE        DATE

M/E-009 (4/99)

COMPANY



## ESSEX INSURANCE COMPANY

### Illinois Service of Suit
### Mandatory Endorsement

It is agreed that in the event of the failure of this Company herein to pay any amount claimed to be due hereunder this Company hereon, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

It is further agreed that service of process in such suit may be made upon the Company's President, at 4521 Highwoods Parkway, Glen Allen, VA 23060-6148, or his nominee, Edgar W. Phoebus, Jr. at Ten Parkway North, Deerfield, IL 60015, and that in any suit instituted against any one of them upon this Policy, this Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named is authorized and directed to accept service of process on behalf of this Company in any such suit and/or upon the request of the Insured to give a written undertaking to the Insured that it or they will enter a general appearance upon this Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any state, territory or district of the United States of America, which makes provision therefor, this Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured or any beneficiary hereunder arising out of this contract of insurance and hereby designated the above-named at the person to whom the said officer is authorized to mail such process or a true copy thereof.

011-1087 (9/97)



## ESSEX INSURANCE COMPANY

**MARKEL**

## COMBINATION GENERAL ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM
OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1. Coverage under this insurance is limited to operations described under 'business description' and/or 'classification' on the declarations' pages of policy.

2. This insurance does not apply to Part 4 of Section II in the Coverage Form - Who is an insured.

3. Supplementary Payments-Coverages A & B - in the Coverage Form is amended to read with respect to 1. last paragraph: These payments will not reduce the limits of insurance, except with respect to attorneys' fees incurred by us in defense of an indemnitee of the insured, and this applies throughout Supplementary Payments-Coverages A & B - section of this policy.

4. Insured contract to which this insurance applies means any written (A) - Lease of premises excluding indemnification to another for damage by fire to premises while rented to you or temporarily occupied by you and/or  (B) - Easement agreement except in connection with construction or demolition operations on or adjacent to a railroad, and/or (C) - Indemnification of a municipality as required by ordinance, except in connection with work for the municipality, and/or (D) - Sidetrack agreement or any easement or license agreement in connection with vehicle or pedestrian private railroad crossing at grade, and/or (E) - elevator maintenance agreement.

5. This insurance does not apply to claims arising out of breach of contract, whether written or oral, express or implied, implied-in-law, or implied - in fact contract.

6. Wording in Coverage Form, 2. Exclusions, Section I - Coverages, e. Employer's Liability, is replaced by the following and applies throughout this policy:
   This insurance does not apply to liability for "Bodily Injury" to:
   an "employee" of any insured arising out of and in the course of employment or while performing duties related to the conduct of an insured's business; or (B) any injury or damage to any other person including but not limited to spouse, child, parent, brother, sister or relative of the "employee" as a consequence of (A);. This exclusion applies whether an Insured may be liable as an employer or in any other capacity and applies to any obligation to share damages with or repay someone else who must pay damages because of the injury, as well as liability assumed under any "Insured Contract." Wherever the word "employee" appears above, it shall also mean any member, associate, co-employee, leased worker, temporary worker, union worker, volunteer, or any person or persons loaned to or volunteering services to you.

7. Fines, penalties, and punitive or exemplary damages are not covered under this policy nor are any expenses nor any obligation to share such damages or repay another. However, this does not apply to Punitive Damages from Wrongful Death brought under Alabama's Wrongful Death Statute.

8. Professional Liability, Errors, Omission, Negligent Acts, Malpractice and/or acts of any type including rendering or failure to render any type professional service is not covered under this policy, unless such coverage is specifically endorsed onto the policy.

9. Wording in Coverage Form, 2. Exclusions, Section I - Coverages, c. Liquor Liability, last paragraph, is deleted. Item (4) is added as follows: (4) any act or omission by any Insured, any employee of any Insured, patrons, members, associates, volunteers or any other persons respects providing or failing to provide transportation, detaining or failing to detain any person, or any act of assuming or not assuming responsibility for the well being, supervision or care of any person allegedly under or suspected to be under the influence of alcohol.

**ME-001 (01/05)**



10. This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to:

   a. by ownership, non-ownership, maintenance, use, or entrustment to others of any 'auto', aircraft, watercraft, snowmobile, all terrain vehicle (ATV), or motorcycle. Use includes operation and 'loading' and 'unloading'; or

   b. from Employment-Related Practices, regardless of allegations, including but not limited to:

      (1) refusal to employ, or termination of employment; or
      (2) discrimination, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment in any form, humiliation, or other employment-related practices, policies, acts or omissions; or

   c. as a result of discrimination of any kind, actual or alleged; or

   d. as a result of and/or arising out of assault and/or battery, or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of any insured, insured's employees, patrons or any other person(s); or

   e. as a result of alleged negligence or other wrongdoing in the hiring, training, placement, supervision, or monitoring of others by insured; or

   f. as a result of any person practicing for and/or participating in any contest, event or function of a sporting or athletic nature; or

   g. by any animal, regardless whether owned by you, in your care, or on your premises; or

   h. by any named insured covered by this policy initiating causes of action or allegations against any other insured covered by this policy; or

   i. from intellectual property, proprietary property rights, patent, trademark and/or copyright infringement, misappropriation of trade secret and/or practice, piracy, fraudulent concealment, unjust enrichment, misrepresentation or negligent misrepresentation; and/or deceptive, false, fraudulent, misleading, unfair, unlawful or untrue business act or practice with respect to advertising; or

   j. from any action or omission that violates or is alleged to violate the Telephone Consumer Protection Act (TCPA), the CAN-SPAM Act of 2003, including any amendment of or addition to such laws, or any analogous local, state or federal statute, ordinance or regulation, other than the foregoing, that prohibits or limits sending, transmitting, communicating, solicitation, or distribution of material or information using e-mails, telephone, telephone facsimile machine, computer or other electronic device; or

   k. resulting from water or moisture, and/or due to discharge, leakage, seepage, backup or overflow from sewers, mains, drains, pipes, plumbing, heating, refrigeration, air conditioning, standpipes, appliances, sprinkler systems, or ditches, streams, levees, or rain or snow admitted to the building interior; or

   l. from Internet exposures, world-wide web, cyber system(s), computer hardware or software, electronic data, e-mail, unauthorized use, loss/misuse of data, or from loss of, alteration of, failure, error, negligence, malfunction, inadequacy of, damage to or a reduction in functionality, availability or operation of a computer system, network(s), program(s), software, data, information repository, microchip(s), integrated circuit or similar device in computer equipment or non-computer equipment, regardless of cause, and/or resultant loss of income, whether property of the insured or any other; or

   m. from criminal acts, fraudulent, dishonest or malicious acts or omissions from any Insured, any employee of any insured or anyone for whom you may be held liable; or

ME-001 (01/05)

11. If this policy includes a Lessors Risk Only (LRO) classification, it is written and priced as such only on condition that your lease or agreement with tenant(s) requires (commercial) tenant(s) carry Commercial General Liability coverage with limits at least equal to the limits of this policy, names you as an additional insured on their policy, and you require and secure a certificate of insurance confirming same. Parking areas or other land of premises leased to tenant(s) must also be covered by their insurance, or separately submitted and priced hereunder. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense. The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

12. Where there is no coverage under this policy, there is no duty to defend.

**ME-001 (01/05)**

 

**ESSEX INSURANCE COMPANY**

## ADDITIONAL CONDITIONS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury' or any injury, loss, or damages, including consequential injury, loss or damage, arising out of, caused by or contributed to or as a result of:

1.

    (A) 'movement of land or earth' regardless whether emanating from, aggravated by, or attributable to any operations performed by or on behalf of any insured, and regardless whether first manifestation of same occurs during the policy period or prior or subsequent thereto. 'Movement of land or earth' includes, but is not limited to, instability, subsidence, settling, sinking, slipping, falling away, caving in, shifting, eroding, rising, tilting, bulging, cracking, mud flow, mudslide, earthquake, shrinking or expansion of ground, slabs, footings, foundations, walls, roofs, floors, ceilings or any other real property or part thereof, or any other movements of land or earth; or

    (B) pollution, contamination, contaminants, irritants, including but not limited to injuries alleged as a result of actual, alleged or threatened exposure to and/or absorption of and/or inhalation of, and/or ingestion of, contact with, existence of, presence of, and environmental impairment, including but not limited to damage to natural habitats and species. Expenses and any obligation to share damages with or repay anyone else who must pay damages from same in conjunction with occurrences or actions arising or alleged to have arisen out of same are not covered. All liability and expense arising out of or related to any form of actual or alleged pollution, and/or contamination, and/or environmental impairment, whether intentional or otherwise, and whether or not any resulting injury, damage, devaluation, cost or expense is expected by any Insured or any other person or entity, is excluded throughout this policy. This includes but is not limited to devaluation of property, or for taking, use or acquisition or interference with the rights of others in or on property or air space.

    Any loss, cost, expense, fines and/or penalties arising out of any
        (a) request, demand, order, statutory or regulatory requirement, governmental authority or directive or that of any private party or citizen action that any Insured, or others, test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess same the effects of pollutants, and/or contaminants and/or irritants, and/or environmental impairment; and/or
        (b) litigation or administrative procedure in which any Insured or others may be involved as a party as a result of actual, alleged, or threatened, discharge, dispersal, seepage, migration, release, escape, or placement of pollutants and/or contaminants and/or environmental impairments into or upon land, premises, buildings, the atmosphere, any water course, body of water, aquifer, or ground water, whether sudden, accidental, deliberate, or gradual in nature or not, and regardless of when,
    are not covered.

    Pollutants and/or contaminants and/or irritants mean any solid, liquid, gaseous, thermal, acoustic, electrical, or magnetic irritant, contaminant, or pollutant, including but not limited to smoke, fumes, heat, soot, vapor, emissions, fibers, radiation, acids, alkalis, fuels, petroleums, lubricants, operating fluids, pesticides, fertilizers, paints, dust, toxic dust, spores, chemicals and waste. Waste includes but is not limited to medical waste and all other materials to be disposed of, recycled, stored, reconditioned or reclaimed.

**ME-002 (1/05)**

**Page 1 of 2**

 

This wording supersedes and replaces all other wording on 'Pollution' in the Coverage Form attached to this policy; or

(C) asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning

    (a) whether arising out of actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, presence of, discharge, dispersal, seepage, migration, infiltration, infestation, release, escape, growth, production or reproduction of or toxic substances from asbestos, lead, silica dust, dust and/or toxic dust, fungi, bacteria, organic pathogens, bio-organic growth and/or systemic chemical poisoning. This applies regardless of source, including but not limited to, from any goods, products or structures containing same, existence of same in any form, in occupancy or construction, manufacture, sale, transportation, handling, storage, disposal or removal of same; and

    (b) regardless of supervision, instructions, recommendations, requests, warnings or advice given or which should have been given, as well as any costs, including but not limited to abatement, mitigation, removal, containment, treatment, detoxification, neutralization, or disposal of same, or in any way respond to assess the effects of same.

Coverage does not apply to any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way, responding to, or assessing the effects by any insured or by any other person or entity.

"Fungi" hereunder means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi. However, this exclusion does not apply to any "fungi" or bacteria that are on, or are contained in, a good or product intended for bodily consumption.

(D) If contractors or subcontractors are used, it is a condition of coverage that you use only those that are insured, and carry at a minimum Commercial General Liability coverage with limits at least equal to the limits of this policy, name you as an additional insured on their policy, and carry workers compensation insurance, and you require and secure certificates of insurance confirming same. Failure to comply with this condition does not void your coverage, however, limits of liability hereunder will be reduced and apply as a 'sublimit' of liability, being a Combined Single Limit, $50,000 each occurrence and in the Aggregate, including loss adjustment expenses and defense.

The sublimit would be the most payable for all damages arising out of any one occurrence, and the most payable for all claims under this policy, including investigation and defense. If such sublimits were tendered or exhausted, we would not defend or continue to defend in any suit.

Further, there is no coverage under this policy for 'bodily injury', 'personal injury' or 'property damage' sustained by any contractor, self-employed contractor, and/or subcontractor, or any employee, leased worker, temporary worker or volunteer help of same.



## ESSEX INSURANCE COMPANY
MARKEL®

## COMBINATION CONTRACTORS ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

THIS ENDORSEMENT AMENDS THE LIABILITY COVERAGE FORM OR COVERAGE PART (hereinafter referred to as Coverage Form), AND APPLIES TO THE ENTIRE POLICY.

1.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions; However, the following is not an "occurrence" under this policy:
    a.  Actual and/or alleged defective work; and/or
    b.  Actual and/or alleged defective workmanship; and/or
    c.  Actual and/or alleged defective construction; and/or
    d.  Actual and/or alleged negligent construction.

2.  Under the Coverage Form Section I - Coverages, 2. Exclusions, the last paragraph of Exclusions J. Damage to Property, and I. Damage to Your Work, are deleted in their entirety.

3.  This insurance does not apply to 'bodily injury', 'property damage', 'personal injury', 'advertising injury', or any injury, loss or damages, including consequential injury, loss or damage, arising directly or indirectly out of, caused by or contributed to, or resulting from

    a.  claims of incremental, continuous or progressive injury or damage which began to occur, is occurring, was occurring or is alleged to have begun occurring prior to or as of the inception date of this policy; and/or

    b.  any exterior insulation and finish system (EIFS), or any part thereof, or any substantially similar system, whether in whole or in part, including but not limited to the design, manufacture, sale, distribution, handling, construction, installation, application, maintenance or repair, including remodeling, service, correction or replacement, regardless of the brand name of the system installed; and/or

    c.  any invasion or existence of water or moisture, including but not limited to accidental discharge and/or leaks, and/or mold, mildew, bio-organic growth, microorganisms, biological organisms, biaerosols, organic contaminants, and/or including but not limited to, rot and deterioration of property; and/or

    d.  related to 'your work' below ground surface unless, prior to your commencing work, you have either contacted the appropriate local underground locating service, or verified such contact has been made by another with that responsibility, and said service has responded and marked, including but not limited to, all underground lines, pipes, cables, utilities, prior to commencement of 'your work'; and/or

    e.  run off, diversion and/or ponding of water, inadequate drainage, backup and/or overflow, including but not limited to, water, sewer, drains, ditches, pipes, site preparation; and/or

    f.  and occurring during the course of movement of any building or structure by an 'auto' or 'mobile equipment'; the period of movement 1) begins when the building or structure is removed from its old foundation, and 2) ends when the unloading of the vehicle begins for the purpose of placing the building or structure on its new foundation; and/or

M/E-043 (01/05)



g.   any operations involving any hot tar, wand, open flame, torch or heated applications of roofing, or membrane roofing; and/or your failure to determine weather from local weather bureau or station in advance of any roofing job, and having any 'open roof' to the elements, including but not limited to wind, hail, snow, rain, ice or any combination thereof. 'Open roof' as used here shall include any roof or section of roof where shingles, tar, felt paper, and any other protective covering has been removed, thereby leaving exposed any supporting structure, decking, building interior or contents of same to the elements; any 'open roof' must be securely covered in advance of any precipitation, and in advance of your leaving the job for any period of time.

**M/E-043 (01/05)**





# ESSEX INSURANCE COMPANY

## DEDUCTIBLE ENDORSEMENT

*Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

**THIS ENDORSEMENT CHANGES THE POLICY.**

## SCHEDULE

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| If provided by this policy: Bodily Injury, Property Damage, Professional or Personal and Advertising Injury Liability | $ 2,500.00 | Per Claim |
| Exception: _____ | $ | Per Claim |

☐ If this box is so marked, the basis of deductible is amended to apply 'on a per item per claim' property damage deductible basis.

1. Our obligation under Bodily Injury Liability, Property Damage Liability, Professional Liability, Personal and/or Advertising Injury Liability, or any other coverage under this policy, to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above. The deductible amount stated above shall be applicable to each claim and will include loss payments, adjustment, investigative and legal fees and costs, whether or not loss payment is involved.

2. The deductible amount stated above applies under the coverages respectively to all damages sustained by one person, or organization, as the result of any one occurrence.

3. The terms of this insurance, including those with respect to:
   (a) Our right and duty to defend any "suits" seeking those damages; and
   (b) Your duties in the event of an "occurrence," claim, or suit apply irrespective of the application of the deductible amount.

4. We may pay any part or all of the deductible amount to effect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

_____   _____/_____

AUTHORIZED REPRESENTATIVE        DATE

M/E-048 (4/99)                    COMPANY

 

**ESSEX INSURANCE COMPANY**

## DEMOLITION/BUILDING WRECKING EXCLUSION

\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

**THIS ENDORSEMENT CHANGES THE POLICY.**

The coverage under this policy does not apply to "bodily injury," "property damage," "personal injury," "advertising injury," or any injury, loss or damage arising out of:

1. Damage to any abutting wall, adjoining wall, common or party wall;

2. The use of explosives, or "ball and chain" or similar apparatus;

3. Underground property damage of wires, conduits, pipes, mains, sewers, tanks, tunnels or any other similar property beneath the surface of the ground or water;

4. Property damage caused by the collapse of or structural injury to any building or structure due to grading of land, excavating, burrowing, filling, back-filling, tunneling, pile driving, cofferdam work or caisson work or moving, shoring, underpinning, raising or rebuilding any building or part thereof;

5. Demolition or wrecking of any building or structure which has an original height in excess of 4 stories.

The above applies regardless of whether the work is for total or partial removal, renovation, remodeling or reconstruction.

_____  /
AUTHORIZED REPRESENTATIVE        DATE

M/E-051 (4/99)                COMPANY



## ESSEX INSURANCE COMPANY

### MINIMUM EARNED PREMIUM ENDORSEMENT

* Entry optional if shown in the Common Policy Declarations  if no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

**THIS ENDORSEMENT CHANGES THE POLICY.**

If this insurance policy is cancelled at your request, there will be a Minimum Earned Premium retained by us of $ 350.00  or  25  %(per cent) of the premium, whichever is the greater. Cancellation for nonpayment of premium is considered a request by the first Named Insured for cancellation of this policy.

_____  / _____

AUTHORIZED REPRESENTATIVE          DATE

 

**MARKEL**

## ESSEX INSURANCE COMPANY

## EXCLUSION - REAL ESTATE DEVELOPMENT

*\* Entry optional if shown in the Common Policy Declarations. If no entry is shown, the effective date of the endorsement is the same as the effective date of the policy.*

| *ATTACHED TO AND FORMING PART OF POLICY NO. | *EFFECTIVE DATE OF ENDORSEMENT | *ISSUED TO |
|---|---|---|
| 3CS5114 | 09/03/2005 | Gire Construction, Inc c/o Ed Gire Jr. |

### THIS ENDORSEMENT CHANGES THE POLICY.

It is agreed:

1. This policy does not apply to any liability arising out of Real Estate Development. As used in this endorsement, "Real Estate Development" means:

   A. Structural alterations that involve changing the size of or moving buildings or other structures owned by, occupied by, rented to, or leased to any insured;

   B. New construction or demolition operations performed on any such buildings or structures; or

   C. Any contracting or construction work at insured premises described as "vacant land" as scheduled on this policy.

2. The Named Insured expressly agrees and warrants as follows:

   A. The premises insured by this policy as "vacant land" will remain vacant during the policy period;

   B. The Named Insured will not engage in Real Estate Development as defined herein.

Failure of the Named Insured to comply with these agreements and warranties shall invalidate this policy with respect to the premises involved. In that event, this policy shall not apply to injury or damage arising out of:

   A. The ownership, maintenance, or use of the premises or of any property located thereon;

   B. Operations on such premises or elsewhere that are necessary or incidental to the ownership, maintenance, or use of such premises; or

   C. Goods or products manufactured at or distributed from such premises.

AUTHORIZED REPRESENTATIVE / DATE

REDevEx (09/00)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2000

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

f. **Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

  (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

    (i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

    (ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

  (b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

  (c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

    (i) Any insured; or

    (ii) Any person or organization for whom you may be legally responsible; or

  (d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

    (i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

    (ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

    (iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

     © ISO Properties, Inc., 2000      **Page 3 of 16**    □

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

© ISO Properties, Inc., 2000    CG 00 01 10 01    □

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance ; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.  This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

## 2. Exclusions

This insurance does not apply to:

a.  **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b.  **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.  **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d.  **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e.  **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f.  **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g.  **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h.  **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i.  **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j.  **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1)  Advertising, broadcasting, publishing or telecasting;

(2)  Designing or determining content of websites for others; or

(3)  An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k.  **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

 © ISO Properties, Inc., 2000 CG 00 01 10 01 □

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. **Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

n. **Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

## COVERAGE C MEDICAL PAYMENTS

1. **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

   (3) Because of your operations;

   provided that:

   (1) The accident takes place in the "coverage territory" and during the policy period;

   (2) The expenses are incurred and reported to us within one year of the date of the accident; and

   (3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

   (1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2. **Exclusions**

   We will not pay expenses for "bodily injury":

   a. **Any Insured**

   To any insured, except "volunteer workers".

   b. **Hired Person**

   To a person hired to do work for or on behalf of any insured or a tenant of any insured.

   c. **Injury On Normally Occupied Premises**

   To a person injured on that part of premises you own or rent that the person normally occupies.

   d. **Workers Compensation And Similar Laws**

   To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

   e. **Athletics Activities**

   To a person injured while taking part in athletics.

   f. **Products-Completed Operations Hazard**

   Included within the "products-completed operations hazard".

   g. **Coverage A Exclusions**

   Excluded under Coverage A.

   h. **War**

   Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

   a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

© ISO Properties, Inc., 2000

CG 00 01 10 01    □

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

      (1) "Bodily injury" or "personal and advertising injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

   c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

© ISO Properties, Inc., 2000
CG 00 01 10 01    □

b. If a claim is made or "suit" is brought against any insured, you must:

  (1) Immediately record the specifics of the claim or "suit" and the date received; and

  (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

  (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  (2) Authorize us to obtain records and other information;

  (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

  (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over:

  (1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

    (a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

    (b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

    (c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

    (d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

  (2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

© ISO Properties, Inc., 2000

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the Insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this Insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph f. does not include that part of any contract or agreement:

      (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

      (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

         (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

         (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

      (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

© ISO Properties, Inc., 2000

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

11. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

12. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

      (1) Power cranes, shovels, loaders, diggers or drills; or

      (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

   e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

      (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

      (2) Cherry pickers and similar devices used to raise or lower workers;

   f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

      (1) Equipment designed primarily for:

         (a) Snow removal;

         (b) Road maintenance, but not construction or resurfacing; or

         (c) Street cleaning;

      (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

      (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;

   b. Malicious prosecution;

   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

   d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

   f. The use of another's advertising idea in your "advertisement"; or

   g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

© ISO Properties, Inc., 2000

CG 00 01 10 01    ☐

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

   a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

      (1) Products that are still in your physical possession; or

      (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

         (a) When all of the work called for in your contract has been completed.

         (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

         (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

      Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   b. Does not include "bodily injury" or "property damage" arising out of:

      (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

      (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

      (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

   For the purposes of this insurance, electronic data is not tangible property.

   As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

21. "Your product":

   a. Means:

      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

         (a) You;

         (b) Others trading under your name; or

         (c) A person or organization whose business or assets you have acquired; and

      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

   (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

a. Means:

   (1) Work or operations performed by you or on your behalf; and

   (2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes

   (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

   (2) The providing of or failure to provide warnings or instructions.

© ISO Properties, Inc., 2000

CG 00 01 10 01





COMMERCIAL GENERAL LIABILITY
CG 21 69 01 02

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR OR TERRORISM EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion i. under Paragraph **2.**, **Exclusions** of **Section I - Coverage A - Bodily Injury And Property Damage Liability** is replaced by the following:

  **2. Exclusions**

    This insurance does not apply to:

    **i. War Or Terrorism**

      "Bodily injury" or "property damage" arising, directly or indirectly, out of:

      **(1)** War, including undeclared or civil war; or

      **(2)** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

      **(3)** Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

      **(4)** "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

      regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

      However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

      **(1)** The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions; or

      **(2)** Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

        **(a)** Physical injury that involves a substantial risk of death; or

        **(b)** Protracted and obvious physical disfigurement; or

        **(c)** Protracted loss of or impairment of the function of a bodily member or organ; or

      **(3)** The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

      **(4)** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

CG 21 69 01 02          © ISO Properties, Inc., 2001          **Page 1 of 3**

 

(5) Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2),** immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**B.** The following exclusion is added to Paragraph 2., **Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**War Or Terrorism**

"Personal and advertising injury" arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these; or

(4) "Terrorism", including any action taken in hindering or defending against an actual or expected incident of "terrorism"

regardless of any other cause or event that contributes concurrently or in any sequence to the injury.

However, with respect to "terrorism", this exclusion only applies if one or more of the following are attributable to an incident of "terrorism":

(1) The total of insured damage to all types of property exceeds $25,000,000. In determining whether the $25,000,000 threshold is exceeded, we will include all insured damage sustained by property of all persons and entities affected by the "terrorism" and business interruption losses sustained by owners or occupants of the damaged property. For the purpose of this provision, insured damage means damage that is covered by any insurance plus damage that would be covered by any insurance but for the application of any terrorism exclusions ; or

(2) Fifty or more persons sustain death or serious physical injury. For the purposes of this provision, serious physical injury means:

(a) Physical injury that involves a substantial risk of death; or

(b) Protracted and obvious physical disfigurement; or

(c) Protracted loss of or impairment of the function of a bodily member or organ; or

(3) The "terrorism" involves the use, release or escape of nuclear materials, or directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

(4) The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

© ISO Properties, Inc., 2001

CG 21 69 01 02




**(5)** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

Paragraphs **(1)** and **(2)**, immediately preceding, describe the thresholds used to measure the magnitude of an incident of "terrorism" and the circumstances in which the threshold will apply for the purpose of determining whether the Terrorism Exclusion will apply to that incident. When the Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under this Coverage Part.

In the event of any incident of "terrorism" that is not subject to the Terrorism Exclusion, coverage does not apply to any loss or damage that is otherwise excluded under this Coverage Part.

Multiple incidents of "terrorism" which occur within a seventy-two hour period and appear to be carried out in concert or to have a related purpose or common leadership shall be considered to be one incident.

**C.** Exclusion **h.** under Paragraph **2., Exclusions** of **Section I - Coverage C - Medical Payments** does not apply.

**D.** The following definition is added to the **Definitions** Section:

"Terrorism" means activities against persons, organizations or property of any nature:

**1.** That involve the following or preparation for the following:

    **a.** Use or threat of force or violence; or

    **b.** Commission or threat of a dangerous act; or

    **c.** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

**2.** When one or both of the following applies:

    **a.** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    **b.** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

 

IL 02 84 12 05

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ILLINOIS CHANGES –
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART**
**COMMERCIAL PROPERTY COVERAGE PART**
**FARM COVERAGE PART**

A. The Cancellation Common Policy Condition is replaced by the following:

**CANCELLATION**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing to us advance written notice of cancellation.

2. If this policy has been in effect for 60 days or less, except as provided in Paragraphs 8. and 9. below, we may cancel this policy by mailing written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. If this policy has been in effect for more than 60 days, except as provided in Paragraphs 8. and 9. below, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained through a material misrepresentation;

   c. You have violated any of the terms and conditions of the policy;

   d. The risk originally accepted has measurably increased;

   e. Certification to the Director of Insurance of the loss of reinsurance by the insurer which provided coverage to us for all or a substantial part of the underlying risk insured; or

   f. A determination by the Director that the continuation of the policy could place us in



violation of the insurance laws of this State.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 60 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

4. We will mail our notice to you, any mortgagee or lienholder known to us and to the agent or broker.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. Our notice of cancellation will state the reason for cancellation.

**8. Real Property Other Than Residential Properties Occupied By 4 Families Or Less**

The following applies only if this policy covers real property other than residential property occupied by 4 families or less:

If any one or more of the following conditions exists at any building that is Covered Property in this policy, we may cancel this policy by mailing to you written notice of cancellation, by both certified and regular mail, if:

a. After a fire loss, permanent repairs to the building have not started within 60 days of satisfactory adjustment of loss, unless the delay is due to a labor dispute or weather conditions.

b. The building has been unoccupied 60 or more consecutive days. This does not apply to:

(1) Seasonal unoccupancy; or

(2) Buildings under repair, construction or reconstruction, if properly secured against unauthorized entry.

c. The building has:

(1) An outstanding order to vacate;

(2) An outstanding demolition order; or

(3) Been declared unsafe in accordance with the law.

d. Heat, water, sewer service or public lighting have not been connected to the building for 30 consecutive days or more.

The policy will terminate 10 days following receipt of the written notice by the named

insured(s).

### 9. Residential Properties Occupied By 4 Families Or Less

The following applies if this policy covers residential properties occupied by 4 families or less:

If this policy has been in effect for 60 days, or if this is a renewal policy, we may only cancel this policy for one or more of the following reasons:

a. Nonpayment of premium;

b. The policy was obtained by misrepresentation or fraud; or

c. Any act that measurably increases the risk originally accepted.

If we cancel this policy based on one or more of the above reasons except for nonpayment of premium, we will mail written notice at least 30 days before the effective date of cancellation. When cancellation is for nonpayment of premium, we will mail written notice at least 10 days before the effective date of cancellation.

10. For insurance provided under the Commercial Property Coverage Part and the Capital Assets Program (Output Policy) Coverage Part, the following applies:

### GRAIN IN PUBLIC GRAIN WAREHOUSES

(Not applicable to grain owned by the Commodity Credit Corporation)

The following applies only with respect to grain in public grain warehouses:

The first Named Insured or we may cancel this policy at any time by mailing to:

a. The other; and

b. The Director of the Illinois Department of Agriculture (at its Springfield Office);

60 days' written notice of cancellation.

B. The following is added:

### NONRENEWAL

1. If we decide not to renew or continue this policy, we will mail you, your agent or broker and any mortgagee or lienholder known to us written notice, stating the reason for nonrenewal, at least 60 days before the end of the policy period. If we offer to renew or continue and you do not accept, this policy will terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If we fail to mail proper written notice of nonrenewal and you obtain other insurance, this policy will end on the effective date of that insurance.

2. The following provision applies only if this policy covers residential properties occupied by 4

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

FILED by ___ D.C.
ELECTRONIC

**Sept. 23, 2009**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

ESSESX INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

RYAN K. HILTON, ESQ.
Butler Pappas LLP
777 S. Harbour Island Blvd., Suite 500
Tampa, FL 33602

## DEFENDANTS

KEHRER CONSTRUCTION, INC., a district of Florida corporation; SHARON OCHS, individually, and as mother and

County of Residence of First Listed Defendant **Douglas County**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)

**(d)** Check County Where Action Arose: ☐ MIAMI- DADE ☐ MONROE ☐ BROWARD ☒ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

09CV 81430 WPD /LSS

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability / ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Re-filed- (see VI below) | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO    b) Related Cases ☐ YES ☐ NO

JUDGE _____  DOCKET NUMBER _____

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

28 USC § 2201

LENGTH OF TRIAL via 3 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE 9/18/09

**FOR OFFICE USE ONLY**

AMOUNT 350    RECEIPT # 726357    IFP ___